UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of CLINTON
RIVER CRUISE CO. as
owner of the M/V CLINTON
FRIENDSHIP for Exoneration
From or Limitation of Liability            CASE NO. 03-73139

                                                             PAUL D. BORMAN
                                                             UNITED STATES DISTRICT COURT

_____/

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT**

Presently before the Court are Petitioner's and Claimant's cross-motions for summary judgment. Petitioner is the Clinton River Cruise Company. Claimant is the personal representative of the decedent Rafael DeLaCruz.

**I.    BACKGROUND**

On August 18, 2003 Petitioner filed a Petition for Exoneration from or Limitation of Liability pursuant to 46 U.S.C. app. § 183(a) and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. 46 U.S.C. app.§ 183(a) limits liability of an owner of a vessel for injury or bodily damage to the value of the owner's interest in the vessel and the vessel's freight. § 183(a) states in pertinent part:

> The liability of the owner of any vessel . . . for any loss or injury ...
> shall not, except in cases provided for in subsection (b) of this
> section, exceed the amount or value of the interest of such owner
> in such vessel, and her freight then pending.

Federal Rule of Civil Procedure F sets forth a procedure by which an owner of a vessel

may limit its liability pursuant to § 183(a). To limit its liability under § 183(a), the owner of the vessel, within 6 months of receiving a claim in writing, must file a complaint in district court pursuant to the procedure set forth in Federal Rule of Civil Procedure F, which Petitioner did.

Petitioner Clinton Cruise Co. is the owner and operator of the Clinton Friendship, a 65 foot river boat that operates in the waters of the Clinton River in the United States. Petitioner hosts dinner cruise parties on the Clinton Friendship. On June 3, 2002, decedent DeLaCruz jumped off the Clinton Friendship into the waters below. (Claim ¶ 6, 8). Petitioner alleges that the incident happened through no fault of its own, whereas Claimant maintains that Petitioner was negligent.

Claimant filed its claim on September 8, 2003, alleging negligence. On October 12, 2004, Claimant filed a motion for leave to file first amended claim, which the Court granted. Claimant's amended claim added a breach of warranty of workmanlike service claim.

On November 8, 2004, Claimant filed a motion for summary judgment. On December 7, 2004, Petitioner responded to Claimant's motion, and brought its own motion for summary judgment. On December 14, 2004, Claimant filed its reply brief to Petitioner's response and in opposition to Petitioner's motion for summary judgment.

**II.     ARGUMENTS**

Claimant argues that Petitioner's failure to provide the requisite number of deckhands on board the boat on June 3, 2002 was negligence *per se*, which would entitle it to summary judgment. (Claimant's Br. 6). Claimant contends that, under the *Pennsylvania* doctrine, Petitioner must show that its violation could not have been the cause of the accident. (*Id.* at 6-7). Claimant concludes that because Susan Bremer was not acting as a deckhand on the night of the

accident, the vessel had only one deckhand, Carl Saad, and, therefore, Petitioner is liable for negligence *per se*. (*Id.* at 7-9).

Petitioner argues that the decedent's act of jumping off of Petitioner's vessel and attempting to swim to shore was so unreasonable that no liability may be imposed on Petitioner. (Petr.'s Br. 6-7). Petitioner states that decedent was the proximate cause of his own death. (*Id.* at 7, 11). Petitioner further argues that Claimant may not use the negligence *per se* doctrine because Susan Bremer qualified as a deckhand. (*Id.* at 7-11).

Petitioner also argues that it is entitled to exoneration in this case because it was not negligent and in no way contributed to the death of decedent. (*Id.* at 11-12). Petitioner claims that it had no privity and knowledge of the instantaneous navigation decisions and acts of the vessel's non-management employees. (*Id.* at 12-13).

### III.   ANALYSIS

#### A.   Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that the non-moving party introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the

non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.     Discussion**

If a shipboard accident occurs in navigable waters, federal maritime law, not state law, determines the appropriate standard of care. *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 73 (6th Cir. 1990). Federal district courts have exclusive admiralty jurisdiction over limitation of liability actions. 28 U.S.C. §1333; Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure F. The instant accident occurred in navigable waters.

Under the Limitation Act, 46 U.S.C. app. § 183, "a ship owner is entitled to exoneration if he, his vessel, and crew are found to be completely free of fault." *New Conn. Bank & Trust v. Mussa (In re Cleveland Tankers)*, 67 F.3d 1200, 1203 (6th Cir. 1995) (citing *In re Complaint of Caribbean Sea Transport, Ltd.*, 748 F.2d 622, 626 (11th Cir. 1984), *modified on other grounds*, 753 F.2d 948 (11th Cir. 1985). "Even if not completely free from fault, the ship owner is entitled to limitation of liability if the ship owner had no knowledge of or privity to the ship's negligence or unseaworthiness." *Id.* (*citing S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 642 (6th Cir. 1982); *M/V Sunshine II v. Beavin*, 808 F.2d 762, 764 (11th Cir. 1987). "The burden of proving negligence lies on the person claiming to be injured, but once negligence is established, the vessel's owner must prove lack of knowledge or privity to the negligence." *Id.* (citations omitted).

The elements of a negligence claim under admiralty law are essentially the same as those required to prove a land-based negligence claim. *Pearce v. United States,* 261 F.3d 643, 647-648 (6th Cir. 2001). These elements are: (1) the existence of a duty of care owed by the

5

defendant to the plaintiff; (2) the breach of that duty of care; (3) a causal connection between the offending conduct and the resulting injury, or proximate cause; and (4) actual loss, injury or damage suffered by the plaintiff.  *Id*.

In *Ginop v. A 1984 Bayliner*, 242 F. Supp. 2d 482 (E.D. Mich. 2003), the plaintiff, a guest on a friend's pleasure boat, dove from the boat into shallow water and suffered a spinal cord injury.  242 F. Supp. 2d at 485.  The plaintiff contended that the defendant was negligent in failing to warn the plaintiff about the shallow depth of the water.  *Id.*  The court emphasized that "a defendant is not negligent when the plaintiff's behavior was the proximate cause of the accident."  *Id.* at 486.  The court found that it was not reasonable for the plaintiff, under any circumstances, to jump into the water if he did not know its depth.  *Id.*  The court concluded that the plaintiff's own negligence was the proximate cause of his injury.  *Id.*

In *Pearce v. United States, supra,* the plaintiffs' deceased relatives were fishing in a boat near a dam opening.  Nine warning signs were posted providing that life jackets were required and the water could suddenly rise and become violently turbulent. *Id.* Additionally, publicly available navigation charts listed the area as a danger area.  *Id.* Despite the warning signs, the decedents went fishing inside the dam opening without life jackets.  *Id.* When the dam opened, the decedents' boat was washed upwards and the decedents were thrown out of the boat. *Id.* The decedents drowned.  *Id.*

The plaintiffs claimed that the defendants, the United States Army Corps of Engineers, negligently operated the dam by failing to audibly warn those in the dam's danger zone. *Id.* at 647.  Despite the fact that the horn system was not working on the day of the accident, the Sixth Circuit upheld the district court's finding that the defendants were not negligent because they

had satisfied their duty to warn by virtue of the clearly visible warning signs. *Id.* at 650.

In *Reyes v. Vantage Steamship Company,* 558 F.2d 238 (5th Cir. 1977) ("*Reyes I*") and on further appeal, 609 F.2d 140 (5th Cir. 1980) ("*Reyes II*")[1], the plaintiff brought an action on behalf of the decedent's estate. The decedent, a seaman, was aboard a cargo ship off the coast of Libya. *Reyes I*, 558 F.2d at 239. Decedent, dove off the ship's rail and swam approximately 280 feet from the ship and drown. *Id.* at 240. Reyes *II* confirmed that decedent was legally intoxicated at the time. *Id.* at 141-42. The district court granted summary judgment to the defendant and found that the decedent was the proximate cause of his injury. *Id.* at 241. The Fifth Circuit reversed the district court's ruling. *Id.* at 243.

The Fifth Circuit found that the fatal flaw in the district court's opinion lay in its disregard for the ship's violation of the Coast Guard regulations, specifically 46 C.F.R. § 94.45-1 *et seq.*, which requires that vessels maintain line throwing appliances for rescue operations. *Id.* at 242-43. The Fifth Circuit cited the *Pennsylvania* rule, finding that the defendant violated the Coast Guard regulation, and the regulation was clearly intended to regulate the risk of harm incurred on the decedent. *Id.* at 243. The Court found that the line throwing appliance clearly would have been able to reach the decedent at 280 feet from the ship. *Id.* Based on these findings, the Fifth Circuit found negligence per se. *Id.*

There are a couple of notable aspects of the *Reyes* cases. First, the plaintiff asserted its claims under the Jones Act. In *Reyes II,* the court of appeals held that a ship owner's negligence under the Jones Act need not be the sole proximate cause of an injury to result in liability, but may merely be a contributing case. 609 F.2d at 146. Therefore, according to the court of

---

[1] *Reyes II* modified certain portions of *Reyes I*.

appeals, analysis under the Jones Act results in a "slight standard of causation" as opposed to the common law standard of proximate cause. *Id.*

In addition, the *Reyes* cases involve an employer ship owner's duty to its employee seaman. The holdings in both *Reyes I* and *Reyes II* rely upon this unique relationship to impose a higher standard of care than might otherwise be required. *See*, *e.g.*, *Reyes II*, 609 F.2d at 142 (noting that the affirmative duty to rescue "is an expansive duty which derives from the seaman's celebrated status as a 'ward' of the admiralty...."). Therefore, the Court finds that the cases are inapplicable to the present proceedings which do not involve a claim under the Jones Act negligence standard.

In *Rainsford v. Washington Island Ferry Line, Inc.*, 702 F. Supp. 718, 723 (E.D. Wis. 1988), the district court only defines the term "seaman" for purposes of the Jones Act. Thus, this case is also inapplicable to the case at bar because what is at issue is Bremer's status as a deckhand, not a seaman.

    **1.**    **Negligence *Per Se***

Claimant argues that it is entitled to summary judgment because Petitioner was negligent *per se*. Claimant contends that Petitioner violated the manning statute, 46 U.S.C. §8101, which mandates that a vessel carry the proper number of crewmembers required on the Coast Guard Certificate of Inspection. The Certificate of Inspection for the Clinton Friendship mandates that it have two deckhands. (Claimant's Motion, Ex. A). Under the *Pennsylvania*[2] doctrine, when a statutory rule intended to prevent an admiralty accident exists, such as 46 U.S.C. §8101, and a

---

[2] The *Pennsylvania* doctrine originated from the venerable case *The Pennsylvania,* 86 U.S. 125 (1873).

party violates the statute injuring the party whom the statute was created to protect, the violating party, to avoid liability, must show that its violation could not have been the cause of the accident. *Pearce*, 261 F.3d at 648.

### a. Violation of statute

Claimant argues that the manning statute was violated because only one deckhand was onboard the boat the night decedent drowned. Claimant contends that while the vessel had a crew of four, the only deckhand was Carl Saad. Petitioner contends that Susan Bremer was also a deckhand, and, therefore, it satisfied the requirements of the certificate. Nowhere in 46 U.S.C. § 8101 itself is there any mention of the term "deckhand"; rather, § 8101(a) states that "[t]he certificate of inspection issued to a vessel... shall state the complement of licensed individuals and crew (including lifeboatmen) considered by the Secretary to be necessary for safe operation." Additionally, there is no statutory definition of what constitutes a "deckhand"; none of the cases cited by Claimant[3] support its contention that Susan Bremer was not a deckhand. Instead, those cases merely recite the duties performed by the particular deckhands in question under circumstances much different from the case at bar.

The depositions of Carl Saad and Susan Bremer are quite revealing on the issue of whether Bremer acted as a deckhand on the night that decedent died. Both Petitioner and Claimant admit that Carl Saad was a deckhand, and Carl Saad refers to himself as a deckhand in his deposition. (Saad Dep. 4:10-11). While he states that his responsibilities in that position included navigating the vessel, he admits that they also included "busboy type" activities, such

---

[3]Claimant cites *Tidewater Marine, Inc. v. Sanco International, Inc.*, 113 F. Supp. 2d 987 (E.D. La. 2000); *Rainsford v. Washington Island Ferry Line, Inc.*, 702 F. Supp. 718 (E.D. Wis. 1988); and *Olsen v. American Steamship Co.*, 176 F.3d 891 (6th Cir. 1999).

as "bussing tables, clearing empty glasses, bottles," and "picking up plates." (Saad Dep. 6:9-19; 11:8-21).

Susan Bremer states in her deposition that she held the title of "crew" only. (Bremer Dep. 3). The following exchange took place during Bremer's deposition concerning her activities on the night in question:

> Q: Did you engage in any - - tell me what your activities were; were you like a bartender?
>
> A: No, I can bartend at times, depends on where they need me. I was doing pizza that evening, food service.

(Bremer Dep. 3-4). Bremer states that she has no Coast Guard certification but that she had gone through a "man overboard drill," which entailed telling the captain that someone was in the water, throwing a life ring to that person, and monitoring the life ring. (*Id.* at 5). When counsel inquired whether she considered herself a deckhand, Bremer retorted, "I'm crew, that's what we call ourselves," and stated that the crew that night consisted of four people including the captain. (*Id.* at 8). She describes the functions that she performed that night in the following manner:

> "...I arrived and cleaned the boat, get ice, get pop, ice things up, make sure we have the paper products, help people boarding, then we leave the dock, then I walk around and make sure everything's okay."

(*Id.* at 9). She was aware that she had not engaged in deckhand-type duties on the night decedent drowned as evidenced by the following significant testimony:

> Q: So your duties from the time you boarded, basically you've told us on that particular night is to do the pizza station and throw garbage away, stuff like that?
>
> A: Uh-huh.
>
> Q: No deckhand-type duties?

> A:   *Not that night, no.*
>
> Q:   What do you recognize to be deckhand-type duties?
>
> A:   Handling the lines, staying with the captain, checking with the captain periodically.
>
> Q:   Okay.
>
> A:   *Making sure no one's hanging over the side of the boat.*

(*Id.* at 19) (emphasis added).  When asked who was working deckhand duties that night, Bremer responds unequivocally, "Carl." (*Id.*).  Based upon the combined deposition testimonies of Carl Saad and Susan Bremer, it is apparent to the Court that there was only one deckhand on board the Clinton Friendship on the night of June 3, 2002.

Petitioner contends that Bremer's training as a deckhand was sufficient to find that there were two deckhands on duty that night.  Following that argument to its logical conclusion, one would have to conclude that, for example, a ship with a captain as a passenger could be deemed to have a captain on board as required by the Certificate of Inspection. That would not be the result intended by the Coast Guard's regulations.  While Bremer may have been trained as a deckhand, she was not working in that capacity on the night decedent jumped from the boat.

Despite Petitioner's contention that Ms. Bremer qualified as a "seaman," neither party disputes that she was indeed a member of the crew or a seaman. As Claimant correctly states in its brief response to Petitioner's Supplemental Citation of Authority, "[e]very deckhand is a seaman, but not every seaman is a deckhand."  In fact, the Certificate of Inspection issued to the Clinton Friendship distinguishes between "ordinary seamen" on the one hand, and "deckhands" on the other.  (*See* Claimant's Mem. Supp. Summ. J. Ex. A).

Furthermore, Petitioner appears to be attempting to mislead the court with its assertion

that Susan Bremer's deposition testimony and her subsequent affidavit are complementary. Bremer clearly affirms in her deposition that Carl Saad was the only deckhand on board the night that decedent drowned, and that she did not perform the duties of a deckhand on that particular night. Bremer's affidavit, to the contrary, implies that she did perform deckhand-type duties on the night in question. Petitioner cannot create a genuine issue of material fact by introducing an affidavit that is inconsistent with prior deposition testimony. *Lockard v. GMC*, 52 Fed. Appx. 782, 789 (6th Cir. 2002) (stating that "a party may not create a genuine issue of material fact by filing an affidavit that 'essentially contradicts his previous deposition testimony' after a motion for summary judgment has been made.") (citing *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997)).

Petitioner also submitted the affidavit of Paul Gallas, owner of the Clinton River Cruise Co. and of the Clinton Friendship. Gallas states in his affidavit that the number two crewmember on the vessel had the same responsibilities as the number one crewmember. (Gallas Aff. 1). However, Bremer contradicts this statement during her deposition when she stated that she did not act in the same capacity as the number one crewmember, Carl Saad, on the night of June 3, 2002. If the second crewmember on the Clinton Friendship generally does not act as a deckhand, performing the responsibilities that both Saad and Bremer stated were typical of a deckhand, then that fact only further persuades the Court that there was only one deckhand on the boat the night decedent drowned. Therefore, because the Court has concluded that the Clinton Friendship had only one deckhand on board the boat on the night of June 3, 2002, this conduct violated 46 U.S.C. § 8101(a) and the Coast Guard's manning requirements for the Clinton Friendship per the Certificate of Inspection.

### b. Intent of statute to prevent admiralty accidents

As stated above, the *Pennsylvania* doctrine also requires that the statutory rule that has been violated be "intended to prevent an admiralty accident" before the burden shifts to the violating party to show that its violation could not have been the cause of the accident. *Pearce*, 261 F.3d at 648. In *Roy Crook & Sons, Inc. v. Allen*, the Fourth Circuit provided a detailed legislative history of 46 U.S.C. § 8101, finding that "the Act of Congress which first provided for the inspection and licensing of steamboats engaged in interstate commerce did indicate...that Congress intended to 'provide for the better security of the lives of passengers on board vessels propelled in whole or in part by steam.'" 778 F.2d 1037, 1042 (5th Cir. 1985). Based upon a lengthy examination of the manning statute and case law in other circuits, the court of appeals concluded that Congress meant for the statute to protect both passengers and crew aboard the vessel. *Id.* at 1042-43. Therefore, the Court finds that 46 U.S.C. § 8101 was intended to prevent admiralty accidents.

### c. Proximate cause of accident

Having concluded that Petitioner violated 46 U.S.C. § 8101 by employing only one deckhand on the night that decedent died, and that Congress meant for the statute to protect passengers, the Court must now analyze whether it is a question of material fact whether Petitioner caused the accident. Petitioner bears the burden in this part of the analysis of proving that it was not the cause of decedent's death.

Petitioner contends that decedent was the proximate cause of his own death by jumping off the side of the boat. While Petitioner devotes many lines of its brief chiding decedent for his actions that night, this does not negate the fact that Petitioner may have played some role in

decedent's drowning. From the record, it appears that there was no deckhand on the bottom deck. Based upon the testimony of several witnesses, "[p]rior to decedent diving in, there were three to five people congregating at the stern of the lower deck for three to five minutes, screaming and cheering until decedent dove in and drowned." (Claimant's Br. 6) (citing the deposition testimony of four different witnesses). According to Bremer, a deckhand would have "[made] sure no [one was] hanging over the side of the boat." (Bremer Dep. at 19). In addition, a second deckhand could have stopped the crowd from taunting decedent, notified decedent of the danger he faced, prevented decedent from jumping, told the captain to stop the ship after the dive and reverse thrust the propellers to be closer to decedent, and/or thrown a line out to decedent – as taught in "man overboard" training. Bremer stated that there were no warning signs telling passengers not to jump. Furthermore, while Petitioner makes much of the fact that decedent was not legally intoxicated, the toxicology report indicates that decedent had been drinking and that his blood alcohol level was just shy of the legal limit in Michigan of .08. (*See* Toxicology Report, Petr.'s Mem. Supp. Resp. Ex. C).

Thus, if Bremer had been the second deckhand on board the Clinton Friendship, she could have notified the captain promptly, thrown decedent a life ring, and kept watch, which are all standard procedures in a "man-overboard" situation. (Bremer Dep. 5). Accordingly, because Petitioner has not met its burden of proving that it was not the cause of decedent's death, the Court finds that Petitioner was negligent *per se* and grants Claimant's motion for summary judgment on this issue

### 2. Privity or Knowledge of Negligence

Addressing the substance of Petitioner's motion for summary judgment, under the

14

Limitation Act that governs Petitioner's petition, "a vessel owner may limit liability arising from a casualty to the value of the vessel if the casualty occurred 'without privity or knowledge of the owner.'" 46 U.S.C. app. § 183(a) (1996).  As noted above, once the claimant establishes negligence, the burden shifts to the vessel owner to prove lack of privity or knowledge of the negligence.  *New Conn. Bank & Trust*, 67 F.3d at 1203.  "In the case of individual owners, it has been commonly held or declared that privity as used in [46 U.S.C. § 183] means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury."  *Coryell v. Phipps*, 317 U.S. 406, 411 (U.S. 1943) (citations omitted).  The Court finds that Petitioner had knowledge of the negligence of employing only one deckhand.

Gallas, the owner of the Clinton Friendship, stated in his affidavit that he knew the responsibilities of Susan Bremer and that she was the number two crewmember on the night of June 3, 2002. (*See* Gallas Aff. 1-2).  However, to the extent that Clinton River Cruise Co. sets forth the duties of the second crewmember, and those duties fall below the standard of a deckhand, Petitioner certainly has knowledge of the negligent conduct with which it has been charged.  Therefore, Petitioner's claim of lack or privity or knowledge of the negligence must fail, and Claimant is granted summary judgment on this issue.  The Court denies Petitioner's Motion for Summary Judgment.

### IV.     CONCLUSION

For the foregoing reasons, the Court hereby DENIES Petitioner's Motion for Summary Judgment on Claimant's negligence *per se* and lack of privity claims, and GRANTS Claimant summary judgment on the claim of negligence *per se*.

SO ORDERED.


                                        s/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE

Dated:  October 28, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 28, 2005.


                                        s/Jonie Parker
                                        Case Manager